UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RED'S TRADING POST, INC., | Case No. CV07-090-S-EJL |
| Petitioner, | **MEMORANDUM ORDER** |
| v. | |
| RICHARD VAN LOAN, Director of Industry Operations, Bureau of Alcohol, Tobacco, Firearms and Explosives, | |
| Respondent. | |

Pending before the Court in the above-entitled matter is the Petitioner Red's Trading Post, Inc., ("Red's") motion for preliminary injunction seeking to stay the effectiveness of the revocation of its federal firearm licence during the pendency of this action. The Respondent, Richard Van Loan, Director of Industry Operations for the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), opposes the motion and in its response asks the Court to deny the same.

Having fully reviewed the record herein, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this matter shall be decided on the record before this Court without oral argument.

### I. Factual and Procedural Background

On February 2, 2006, the ATF sent a Notice of Revocation to Red's notifying it that its federal firearm license was revoked. Although the notice of revocation and subsequent

activity are the subject of the pending matter, it is necessary to go back several years to adequately understand the history between these parties.

In the summer of 2000, ATF representatives conducted an audit of Red's records pertaining to the acquisition and disposition of firearms.  That investigation resulted in at least three violations of the Gun Control Act of 1968, 18 U.S.C. § 921 et seq., which ATF deemed serious enough to warrant a warning conference.  Red's was allegedly advised any future violations would be grounds for revocation of its federal firearms license.  Ryan Horsley, an owner and officer of Red's, indicated that several measures were implemented in response to the violations found by ATF.  Later, in 2001, Red's was again inspected by two ATF agents.  Following that inspection, ATF agent John Hansen verbally informed Mr. Horsley that there were no violations and that everything was in order.  The record shows no other formal communication between ATF and Red's until 2005.

On June 10 - 15, 2005, the ATF inspected Red's records again.  Based on this investigation, the ATF alleged multiple violations of the Gun Control Act of 1968 and issued a Notice of Revocation of License to Red's.  Red's timely requested an administrative hearing pursuant to 18 U.S.C. § 923(f)(2).  This hearing was held on August 8, 2006, and was presided over by Janalee White, an ATF industry operations investigator.  The hearing officer confirmed the decision of the ATF and recommended Red's license should be revoked.

On December 30, 2006, Red's received a Final Notice of Denial of Application or Revocation of Firearms License from Richard Van Loan of ATF.  The ATF set forth ten (10) grounds for revoking Red's license and took the position that Red's license would be revoked effective March 5, 2007.  By letter dated March 1, 2007, Red's urged the ATF to

postpone the effective date of the revocation.  The ATF responded to the request by offering Red's the ability to continue operating according to specific conditions.  Specifically, Red's would be permitted to sell their remaining inventory and ATF could conduct regular status checks on the disposition of Red's inventory.  Red's found the offer to be unworkable, and timely filed a petition for judicial review of the final agency action with this Court.

On March 20, 2007, Red's moved for a preliminary injunction seeking to stay the effectiveness of the revocation of its license.  Two weeks later, before ATF had an opportunity to respond to the preliminary injunction motion, Red's filed a motion for a temporary restraining order seeking immediate relief, claiming its business had begun to drop off more than anticipated due to the revocation.  The Court ordered an expedited response from ATF before ruling on the temporary restraining order.  On April 4, 2007, after considering the response by ATF, the Court denied Red's motion for a temporary restraining order and expedited the briefing schedule for the preliminary injunction.  In denying Red's motion for a temporary restraining order, the Court noted that at the time of its review, Red's had failed to demonstrate immediate irreparable harm.  Moreover, the Court was not convinced granting the temporary restraining order would serve the public interest and did not adequately address the need for public safety.

ATF has filed their response to the motion for preliminary injunction and Red's has had an opportunity to reply.  The matter is now ripe for this Court's consideration.

## II.  Standard of Review

Federal Rule of Civil Procedure 65(a) discusses the procedure to be followed on an application for a preliminary injunction.  Broadly defined, a preliminary injunction is a judicial remedy that is issued to protect a plaintiff from irreparable harm while preserving

the court's power to render a meaningful decision after a trial on the merits. Thus, a preliminary injunction may issue even though a plaintiff's right to permanent injunctive relief is not certain. The grant or denial of a preliminary injunction is a matter of the court's discretion exercised in conjunction with the principles of equity. See Inland Steel Co. v. United States, 306 U.S. 153 (1939); Deckert v. Independence Shares Corp., 311 U.S. 282 (1940); and Stanley v. Univ. of S. Cal., 13 F.3d 1313 (9th Cir. 1994).

While courts are given considerable discretion in deciding whether a preliminary injunction should enter, and injunctive relief is not obtained as a matter or right, it is also considered to be an extraordinary remedy that should not be granted unless the movant, by a clear showing, carries the burden of persuasion. See Sampson v. Murray, 415 U.S. 61 (1974); Brotherhood of Locomotive Engineers v. Missouri-Kansas-Texas R. Co., 363 U.S. 528 (1960); and Stanley v. Univ. of S. Cal., 13 F.3d 1313 (9th Cir. 1994).

The Ninth Circuit has stated that a party seeking preliminary injunctive relief must meet one of two tests. Martin v. Int'l Olympic Comm., 740 F.2d 670, 674-75 (9th Cir. 1984). Under the first,

> [A] court may issue a preliminary injunction if it finds that: (1) the [moving party] will suffer irreparable harm if injunctive relief is not granted, (2) the [moving party] will probably prevail on the merits, (3) in balancing the equities, the [non-moving] party will not be harmed more than [the moving party] is helped by the injunction, and (4) granting the injunction is in the public interest.

Id. (Internal quotations and citations omitted); and Stanley v. Univ. of S. Cal., 13 F.3d at 1319. Under the second, the movant must show "either (1) a combination of probable success on the merits and the possibility of irreparable harm, or (2) the existence of serious questions going to the merits, the balance of hardships tipping sharply in its favor, and at least a fair chance of success on the merits." Miller v. Cal. Pac. Med. Ctr., 19 F.3d 449, 456

(9th Cir. 1994) (en banc).  This alternative test is on a sliding scale: the greater the likelihood of success, the less risk of harm must be shown, and vice versa.  Id.

Speculative injury is insufficient to support a finding of irreparable harm.  As the Ninth Circuit has stated,

> Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction ... a plaintiff must do more than merely allege imminent harm to establish standing, a plaintiff must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief.

Carribean Marine Serv. Co. v. Baldridge, 844 F.2d 668, 674 (9th Cir. 1988).

## III.  Analysis

The ATF has the authority to revoke a firearms license previously granted if the holder of the license has willfully violated the provisions of chapter 44, title 18 of the United States Code or any rules or regulations promulgated by the Attorney General in accordance with that chapter.  18 U.S.C. § 923(e).  Prior to revoking any license, the Attorney General must give notice and an opportunity for hearing.  In this case, Red's was given notice in accordance with prescribed regulations that its federal firearm license was going to be revoked based on multiple violations of the Gun Control Act which it deemed to be willful.  Red's requested and was given a hearing, but the decision to revoke its license was affirmed and a final notice of revocation was issued.  Red's contends that its actions or omissions fail to rise to the level of willful violations and therefore argue that the revocation is improper.

As previously indicated, the Ninth Circuit employs two tests to determine if a preliminary injunction should issue.  The parties in this case have confined their arguments to the second, or alternative test.  To be successful under that test, Red's must show either

that it is probable it will be successful on the merits and there is a possibility of irreparable harm <u>or</u> that there are serious questions going to the merits and the balance of hardships tips sharply in their favor.[1]  At this stage in the litigation, the Court cannot find that Red's will "probably" succeed on the merits even though it has established a possibility of irreparable harm.  Therefore, the Court will examine whether Red's can satisfy that there are serious questions going to the merits and that the balance of hardships tips sharply in its favor.

> **A.        Serious Questions Going to the Merits**

For purposes of injunctive relief, "serious questions are substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation."  <u>Gilder v. PGA Tour, Inc.</u>, 936 F.2d 417, 422 (9th Cir. 1991).  Red's first questions whether the ATF has the authority and/or discretion to lift a statutorily required stay after the administrative hearing is complete.  The Court disagrees with this argument.  It appears clear from the regulations that the Director of Industry Operations may, when justice so requires, postpone the effective date of revocation of a license pending judicial review.  27 C.F.R. § 478.78.  The language is permissive, not mandatory.  Thus, while the Director may postpone the effective date of the revocation until after the entire judicial review process is complete, he is not required to do so.  Whether the ATF has the authority to lift the stay after the administrative hearing is therefore not a serious question requiring more deliberate investigation.

Red's next argues that even if the ATF has the discretion to lift the stay, there are other serious questions, including whether such discretion was properly exercised or whether the record adequately establishes that Red's willfully violated the Gun Control Act.  Because

---

[1] <u>Warsoldier v. Woodford</u>, 418 F.3d 989, 993-94 (9th Cir. 2005).

the Attorney General's authority to revoke a license is limited to instances where willful violations have occurred, any question as to whether the correct standard was met necessarily raises a substantial question that merits more deliberate investigation.

The ATF correctly identifies that in the Ninth Circuit, a federal firearms licensee willfully violates the regulatory scheme created by Congress if it has knowledge of the obligations imposed by Congress and either disregards or is indifferent to them.  Perri v. Department of Treasury, 637 F.2d 1332, 1336 (9th Cir. 1981).  However, based on the record before this Court, it is unclear whether Red's actions and/or omissions raise to the level of indifference to the regulations.  More specifically, there are at least three things that create ambiguity on this front.  First, the ATF complains that nothing has been done to improve record keeping after the 2000 inspection, but it makes no mention of Red's investigation and implementation of automated data systems.  Second, the ATF speaks of violations found during the inspections of 2000 and 2005, but fails to reveal that additional investigations in 2001 and 2007 revealed no violations or problems.[2]  Third, it is difficult to determine from the record before the Court whether the ATF is exaggerating Red's conduct by "double counting" certain violations.  Because the Court finds these  are serious questions that require more deliberate investigation, the first prong of the test for a preliminary injunction is satisfied.

### B.    Balance of Relative Hardships

Next, the Court must balance the relative hardships to see if the scales tip sharply in favor of either party.  When the Court denied Red's motion for a temporary restraining order

---

[2]  See Third Affidavit of Ryan Horsley.  Paragraph 5 details the inspection in 2001 and the resulting exchange between Mr. Horsley and ATF agent John Hansen indicating that there were no violations.  Paragraph 13 details the April 5, 2007 inspection.  At the conclusion of this inspection, Mr. Hansen indicated the business records were satisfactory and "spot on."

it noted Red's had failed to demonstrate that failure to grant the temporary restraining order would result in immediate irreparable harm.  The Court noted allegations that Red's might suffer financial hardship does not establish irreparable harm.  The Third Affidavit of Ryan Horsley illuminates this concern.  If not able to continue in business, Red's stands to lose profits and customer goodwill.  The Court recognizes that "temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury."  Sampson v. Murray, 415 U.S. at 90.  However, this case is unlike the traditional civil litigation where damages may be recovered at the conclusion of the case.  Red's has no chance of recovering lost profits from ATF, a government agency.  But more importantly, Red's faces not only temporary lost profits and income, but complete financial destruction if the license revocation is upheld.

In his affidavit, Mr. Horsley details how Red's business has suffered as a result of its license being revoked and being permitted only to sell its remaining inventory.  Ninety percent (90%) of Red's business is derived from the disposition of firearms and is thus dependant upon maintaining its firearm license.  Red's inventory has been reduced to 218 firearms, or 40% of its pre-March 2007 inventory.  Mr. Horsley estimates that the remaining inventory will be drawn down within two months, at which point Red's will no longer remain a viable business and will be forced to close their doors.  "The threat of being driven out of business is sufficient to establish irreparable harm."  Am. Passage Media Corp. v. Cass Communications, Inc., 750 F.2d 1470, 1474 (9th Cir. 1985).  See also Doran v. Salem Inn, Inc., 422 U.S. 922, 932 (1975) (uncontested allegations that petitioner would suffer substantial business loss and perhaps even bankruptcy is sufficient to support a preliminary injunction); Na Lei Alii Kawananakoa v. Hui Malama I Na Kupuna O Hawai'i Nei, 158

Fed.Appx. 53, 54-55 (finding that great risk of irreparable harm tipped the balance of hardships sharply in plaintiff's favor).    The ATF does not contest Mr. Horsley's representations in this regard.

While the hardships placed upon Red's are great, the Court cannot simply look at them in a vacuum.  The Court is required to also consider the hardships that ATF will suffer, if the preliminary injunction is granted.  Curiously, ATF does not address the hardships that it will suffer.  However, the Court can logically infer that one hardship it may suffer is delay in enforcing the licensing provisions of the Gun Control Act.  This, however, does not outweigh Red's hardship in likely going out of business.[3]

Another hardship that relates to the ATF is the need for public safety.  The Court has considered this public interest in connection with this motion for a preliminary injunction. When Red's motion for a temporary restraining order was denied, the Court found that of critical importance was the need for public safety and complete and accurate recording of firearm dispositions.  The Court was not convinced that the public interest would be served by granting the temporary restraining order, especially as it appeared that Red's did not contest that the violations occurred.  Moreover, it appeared based on the ATF's response that Red's would be unwilling to implement the necessary quality or compliance controls to avoid future technical violations.  Based on the record now before the Court, it appears that the deficiencies in this area have been addressed by Red's.

The Court has now been provided with a complete briefing on the issues in this case, a luxury the Court did not enjoy at the time it ruled on the motion for temporary restraining

---

[3]  If delay in enforcing the license revocation were truly a concern to ATF, it seems illogical that it would permit Red's to continue to sell its remaining inventory.  Moreover, following the investigation that uncovered the alleged violation in June of 2005, it was six (6) months before a notice of revocation was issued, and an additional twelve (12) months before the administrative review was completed.

order.  Moreover, given the additional time that was necessary for the parties to complete their briefing, the Court has been able to more closely examine the record and the alleged violations.  Earlier it appeared that Red's admitted that the violations occurred based largely upon the newspaper article submitted by the ATF.  In light of Mr. Horsley's third affidavit and Red's reply brief it is fair to say that the admission of liability is, at a minimum, contested now.  Next, it appears that number of alleged violations may be exaggerated somewhat as some of the gun sales seem to be double counted in ATF's alleged violations.  Lastly, the Court finds that the amount and nature of the alleged violations, taken in comparison with Red's total annual sales, does not raise a serious concern to public safety.[4] Based on the record now before the Court, the Court finds that granting the preliminary injunction would not place the public safety in jeopardy and that the public interest in fact weighs in favor of granting the motion.  Thus, the Court finds that the relative hardships tip sharply in favor of Red's.

## IV.  Conclusion

Having found that Red's has satisfied both prongs of the alternative test for a preliminary injunction the Court hereby grants Red's request to stay the effective date of the revocation of its federal firearm license throughout the pendency of this Court's judicial review.  However, because the Court finds the need for public safety and the complete and accurate recording of information in connection with the disposition of firearms is still of critical importance, the requested stay is conditioned upon the following terms:

---

4  This fact is bolstered somewhat given that the ATF has allowed Red's to continue to deal in arms on a limited basis and has not accused Red's of criminal activity.  Moreover, the ATF does not claim that any firearms are missing, cannot be traced, or have been sold to anyone that is not entitled to own a firearm.

MEMORANDUM ORDER - 10

1.  The ATF may conduct periodic audits or inspections of Red's records throughout the entire pendency of this Court's judicial review at a rate of not more than one audit or inspection in every fourteen (14) calendar days.

2.  All orders for additional firearm inventory must be specifically approved by the ATF.  Approval shall be granted in a timely manner not to exceed seven (7) days if the periodic inspections show satisfactory compliance with the regulations.

The Court finds that the continued oversight by the ATF via the above conditions will adequately address the need to protect the public safety.  However, if these terms prove to be unworkable to the parties, the Court would be willing to entertain a joint stipulation addressing procedures for oversight during the pendency of judicial review.  If the parties do not submit a joint stipulation, the terms the Court has outlined herein shall be binding.  The Court urges Red's to be vigilant and meticulous in complying with these terms, as failure to do so will result in a termination of the injunction.  If this occurs, the revocation of Red's license will become effective immediately and Red's will no longer be able to engage in any firearms activity for which a valid license is required, including selling any remaining firearms in inventory during the pendency of the judicial review.

**ORDER**

Based on the foregoing, and the Court being fully advised in the premises, it is **HEREBY ORDERED** that Red's Motion for a Preliminary Injunction (Dkt. #7) is **GRANTED**, subject to the terms and conditions stated herein.

**SO ORDERED.**

DATED:  **April 30, 2007**

Honorable Edward J. Lodge
U. S. District Judge