THOMAS E. MOSS, IDAHO BAR NO. 1058
UNITED STATES ATTORNEY
DEBORAH A. FERGUSON, IDAHO BAR NO. 5333
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF IDAHO
WASHINGTON GROUP, PLAZA IV
800 PARK BLVD., SUITE 600
BOISE, IDAHO 83712
TELEPHONE: (208) 334-1211
FACSIMILE: (208) 334-1414

Attorney for Respondent

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RED'S TRADING POST, INC., ) | Cv. No. CV-07-00090-EJL |
| ) | |
| Petitioner, ) | **RESPONDENT'S PRE-TRIAL** |
| ) | **MEMORANDUM** |
| vs. ) | |
| ) | |
| RICHARD VAN LOAN, Director of Industry ) | |
| Operations, Bureau of Alcohol, Tobacco, ) | |
| Firearms and Explosives, ) | |
| ) | |
| Respondent. ) | |
| ) | |

The United States of America, on behalf of its agency, the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), by and through its counsel, Deborah A. Ferguson, Assistant United States Attorney for the District of Idaho, files Respondent's Pre-Trial Memorandum. The Petitioner has incorrectly advised the Court of several crucial facts of its Pre-Hearing Memorandum that require an immediate response (Docket No. 67). According to Petitioner, the 2005 inspection involved no unaccounted for firearms or transfers to parties not entitled to

**RESPONDENT'S PRE-TRIAL MEMORANDUM - 1**

possess them. (Petitioner Memo. at p. 1). In fact, 10 unaccounted for firearms were indicated in the 2005 inspection. This was especially serious as it was a reoccurring offense; the Petitioner could not account for 25 firearms in March 2000 and an additional 5 firearms in January of that year. Just as egregious, the Petitioner also falsely informs the Court there were no transfers of firearms to parties not entitled to possess them. In the 2005 inspection, it was revealed and is uncontested Petitioner conducted a firearms transaction without any evidence of a Firearms Transaction Record or recorded disposition of the firearm, or a background check. Petitioner also sold a firearm to a purchaser who refused to respond to whether he renounced his citizenship. It also prepared a Firearms Transaction Record with no less than three different years surrounding its date of transfer. On other occasions firearms were transferred without fully completing required background checks. In another transaction, no Firearms Transaction Record was ever found and Petitioner asserts a customer took it with him. It has never been recovered. There are also numerous other violations as set forth in the Administrative Record before the Court.

The Petitioner also erroneously states the "2005 inspection surveyed the paperwork for literally thousands of transactions." (Petitioner's Memo. at p. 1). Again, false. The evidence will show as reflected in the 2005 Inspection Report that only a sampling of Firearms Transaction Records were reviewed, namely, the six months prior to the inspection out of a three-year time period. That six-month period consisted of the review of 430 Firearms Transaction Records from the period between November 2004 to May 2005 and of these transactions, the majority contained errors and omissions. It is reasonable to infer that had thousands of transactions been

**RESPONDENT'S PRE-TRIAL MEMORANDUM - 2**

reviewed, they would have contained similar violations.[1]

The fact is that revocations of federal firearm licenses are rarely imposed in Idaho. This revocation rests squarely on Petitioner's shoulders. It had very serious problems in 2000, involving the failure, among many others, to account for 30 firearms. Petitioner was notified of the seriousness of its violations. A Warning Conference, an infrequent occurrence in and of itself, was held. In this face to face meeting, the President and Secretary/Treasurer of Red's Trading Post, Inc. were advised that further violations would result in a revocation of its license. It was, yet again, educated on the correct procedures to ensure compliance of the Gun Control Act. The Petitioner indicated that procedures would be implemented immediately to prevent further violations. Yet a year later in 2001, the follow-up inspection indicated Petitioner had sold a firearm despite the fact the buyer indicated he was an illegal alien and in another instance, the purchaser refused to indicated whether he was under an indictment for a felony. ATF discussed these 2001 violations with the Petitioner (contrary to Petitioner's allegations) and reminded it to be vigilant and not to repeat these errors, but it did not take further action beyond this discussion as that inspection showed a marked improvement over 2000.

However, just four years later, Red's lapsed again and had another very poor inspection in 2005. The inspection revealed 10 firearms were missing, and a transaction was conducted without any evidence of a Firearms Transaction Record or an FBI background check. Hundreds

---

[1] Petitioner decided it was unimportant and therefore unnecessary to indicate the county where the buyer resides on the Firearms Transaction Record, even though this information is required and directly assists in a firearms' traceability. When considering these omissions with the other irregularities found on the Firearms Transaction Records, the sample group had an error rate of over 75% (approximately 335 out of 450).

of other irregularities or missing information were found on the Firearms Transaction Records as Petitioner failed to complete the portions of the Firearms Transaction Records it apparently deemed redundant or irrelevant. In addition, Petitioner failed to report multiple sales of firearms on four occasions to alert ATF and local law enforcement to potential firearm traffickers. Petitioner would have the Court dismiss all these errors as minor and inadvertent. It blames its employees, for whom it is responsible, for these serious and repeated violations, although Red's officers also handled many of these improper transactions personally. It asks for this relief despite its clear understanding of the law, numerous prior warnings, and repeated "second chances." It had the opportunity to comply and institute more formal procedures to ensure compliance and failed and/or refused to do so. This was clear because the errors continued.

The records kept by federal firearms licensees are the only type of their kind available to trace a firearm and to aid law enforcement in protecting the public in order to trace firearms used in crimes. It is imperative that these records be complete and accurate and uniform throughout the country. The vast majority of firearm dealers understand and fully accept this responsibility to the public. They understand it is incumbent upon their firearms license to do so.

Unfortunately, there are a rare few, like Petitioner, that do not. Petitioner's theory of the revocation given to the ATF and to this Court of its case can be summed up as follows: "ATF does not have the authority to require a federal firearms licensee to fully and accurately record a firearm transaction under the Gun Control Act and pursuant to ATF's regulations and, while a lot of mistakes were made and many repeated, it's just irrelevant paperwork."

Petitioner repeats its previous arguments raised in its Memorandum in Opposition to

**RESPONDENT'S PRE-TRIAL MEMORANDUM - 4**

Summary Judgment (Docket No. 44), which challenges ATF's authority to make and enforce regulations under the Gun Control Act. Respondent addressed those specious arguments in its Reply Memorandum in Support of Summary Judgment (Docket No. 52), which it incorporates by reference and will not repeat them here. *See also Armalite, Inc. V. Lambert*, 512 F. Supp. 2d 1070, 1080-81 (N.D. Ohio 2007). The Court's Memorandum Order (Docket No. 55) found that "there can be no doubt that certain legal requirements were not satisfied by Red's." (Court's January 24, 2008 Memo. at p. 8). The Court did not embrace Petitioner's counsel's construction of "willfulness," nor for that matter, has any other court. *General Store, Inc. v. Van Loan*, 2007 WL 208425 (E.D. Wash).[2] The fact of the matter is the Petitioner has committed serious and repeated violations. It knows of its obligations under the law and has decided not to voluntarily comply with them, but instead to argue over whether ATF has the authority to enforce its regulations, while Petitioner minimizes every violation it has committed. This is indifference to the law.

ATF seeks revocation here only after Petitioner has demonstrated its plain indifference to the law it must follow. Petitioner has been admonished to comply with the Gun Control Act and educated in how to do so in January 2000, March 2000, May 2000, May 2001, and June 2005. Nevertheless in June 2005, there were new violations and the repetition of other which were serious and egregious.

The Second Amendment of the Constitution states that citizens have the right to bear

---

[2]A copy of the slip opinion is attached as Exhibit A for the Court's convenience and the reference is found on page 3.

**RESPONDENT'S PRE-TRIAL MEMORANDUM - 5**

arms, not the right to sell them. It is incumbent upon federal firearms licensees, who have been entrusted with a responsibility to the public, to sell firearms to only those who are not prohibited from purchasing them, whose identity, age, and residence has been verified and who are approved by a background check. It is also essential that this information be recorded on a Firearms Transaction Record and kept for 20 years and that a dealer keep an accurate record of its inventory so the firearms sold by a dealer can be traced in the event they are used in a crime. Petitioner has failed repeatedly to do so.

The ATF uses its authority to revoke federal firearms licenses very judiciously. In Idaho, this is one of two Notice of Revocations issued in the past 10 years. Should the Court not uphold the ATF's revocation, the Court would send a clear message that if Red's can keep its license, despite it's challenge to the validity of ATF's authority to enforce its regulations, and its repeated and serious violations, and would signal a dealer's compliance with the Gun Control Act is optional. This could have tragic implications on the ability of ATF and law enforcement to trace the firearms its sells and encourage other dealers to follow suit.

Despite Red's spin of the facts of its revocation, the evidence will prove that Red's knew of the law, was given repeated opportunities to institute procedures to ensure compliance, and was indifferent to its responsibility to do so. ATF takes seriously its authority to revoke a firearms license and did so here after all other efforts to achieve voluntary compliance proved ineffectual.

Accordingly, the ATF asks that the Court hear the evidence with an appreciation of the seriousness of the violations, the sheer number of violations, and the fact that despite the 2000

**RESPONDENT'S PRE-TRIAL MEMORANDUM - 6**

Warning Conference, and repeated instructions on how to implement consistent procedures, four years later Red's had a plethora of new violations, many of them repeated. From this, the Petitioner has clearly demonstrated its indifference to the law.

The ATF will prove this evidence to the Court and respectfully asks the Court to enforce the Gun Control Act and upheld its revocation.

DATED this _____ day of March, 2008.

Respectfully submitted,
THOMAS E. MOSS
United States Attorney

DEBORAH A. FERGUSON
Assistant United States Attorney

**RESPONDENT'S PRE-TRIAL MEMORANDUM - 7**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on  3rd  day March, 2008, the RESPONDENT'S PRE-TRIAL MEMORANDUM was electronically filed with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

J. Walter Sinclair
101 S Capitol Blvd. # 1900
Boise, ID 83702-5958
jwsinclair@stoel.com

Mark S. Geston
101 S Capitol Blvd. # 1900
Boise, ID 83702-5958
msgeston@stoel.com

Richard E. Gardiner
10560 Main St., Ste 404
Fairfax, VA 22030
regardiner@cox.net

**RESPONDENT'S PRE-TRIAL MEMORANDUM - 8**