THOMAS E. MOSS, IDAHO BAR NO. 1058
UNITED STATES ATTORNEY
DEBORAH A. FERGUSON, IDAHO BAR NO. 5333
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF IDAHO
WASHINGTON GROUP, PLAZA IV
800 PARK BLVD., SUITE 600
BOISE, IDAHO  83712
TELEPHONE:  (208) 334-1211
FACSIMILE: (208) 334-1414

Attorney for Respondent

## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| RED'S TRADING POST, INC., | ) | Cv. No. CV-07-00090-EJL |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | **RESPONDENT'S POST-TRIAL** |
| | ) | **BRIEF** |
| RICHARD VAN LOAN, Director of Industry | ) | |
| Operations, Bureau of Alcohol, Tobacco, | ) | |
| Firearms and Explosives, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

The United States of America, on behalf of its agency, the Bureau of Alcohol, Tobacco,

Firearms and Explosives, by and through its counsel, Assistant United States Attorney Deborah

A. Ferguson, respectfully submits closing arguments to the de novo hearing held before this

Court on March 4th and 5th, 2008.

**RESPONDENT'S POST-TRIAL BRIEF - 1**

## I.  RED'S WILLFULLY VIOLATED THE GUN CONTROL ACT

### A.    This Court has already correctly identified the controlling definition of willfulness.

Throughout these proceedings, this Court has recognized that the term "willfulness" is defined by the Ninth Circuit to mean indifference to known legal obligations.  As set forth in the Court's Memorandum Order dated January 24, 2008:

> In *Cucchiarra v. Secretary of Treasury,* 652 F.2d 28, 30 (9th Cir. 1981), the Ninth Circuit specifically rejected the argument that conduct is willful only if it is purposeful and intentional.  The Ninth Circuit has not overturned *Perri* or *Cucchiara* since the amendment of the Gun Control Act.  Therefore, the Court finds the appropriate definition of "willfully" is as originally adopted in *Perri*: a willful violation is established when a dealer understands the requirements of the law, but knowingly fails to follow them or was indifferent to them.  While recklessness may also justify a finding of willfulness, recklessness is not required for a firearms seller to have acted willfully.

Docket No. 55, pp. 7-8.

### B.    The 2000 and 2001 inspections documented Red's clear understanding of the Gun Control Act.

A 2000 inspection documented willful violations of the Gun Control Act and demonstrated Red's understanding of the regulations.  Industry Operations Investigator (hereinafter "Investigator") John Hansen led the inspection and testified at the de novo evidentiary hearing.  Investigator Hansen's testimony initially focused on the number and types of violations found.  Regarding the 2000 inspection, on direct examination Investigator Hansen testified he and Inspector Kohler reviewed the firearms transaction records for the prior 12 months.  There were 970 transactions and 150 contained errors.  This included two multiple handgun sales which were not reported.  The investigators then counted the number of firearms on hand and counted the number of open dispositions in the acquisition/disposition record (hereinafter "A&D Book") and noted that there were five missing firearms.  Transcript, Vol. I, 11:19-12:5.  Investigator Hansen testified that the 2000 inspection began in January and was later continued in March to give Red's an opportunity to find the five missing firearms.  Investigator Hansen spoke with Mrs. Horsley, and gave her until January 10th to locate these weapons.  *Id.* at 26:8-24.

**RESPONDENT'S POST-TRIAL BRIEF - 2**

When Investigator Hansen returned to Red's in March of 2000 to conclude his inspection, he found more violations relating to additional missing firearms. He and Inspector Kohler conducted a full physical inventory, and counted all weapons in stock against the A&D Book, and found 25 more missing firearms. *Id.* at 26:25-27:18.

The five missing firearms discovered in January of 2000, followed by the 25 missing firearms discovered two months later demonstrate the fundamental breakdown of Red's internal controls. The most basic responsibility of a Federal Firearms Licensee (hereinafter "FFL"), is the ability to account for, and provide trace information concerning its firearms. Red's had knowledge of the regulatory requirements governing the acquisition and disposition of firearms; and its failure to account for 30 firearms demonstrated a clear lack of regard for those requirements. This lack of regard for its responsibilities as an FFL, coupled with the lack of any meaningful effort to correct problems found in later inspections demonstrates Red's indifference to its regulatory obligations as an FFL. Investigator Hanson testified at the end of the 2000 inspection a closing conference was held. He discussed all the findings, including the ones from January. A report of violations was issued. *Id.* at 27:19-24.

The recommendations made to Red's at the closing conference in March of 2000 focused on the firearms transaction records, multiple sales and the A&D Book. Investigator Hansen recommended that Red's take physical inventories. Red's was also instructed to keep track of the multiple sales, to double check the 4473s (firearm transaction records), and to look for possible multiple sales. *Id.* at 31:20-32:7.

As a result of the violations found, Investigator Hansen recommended a warning conference be held with Red's to review the violations and to further discuss the regulations and the proposed remedial measures. At the warning conference, it was again proposed that Red's conduct periodic inventories and have a second person look at the firearms transaction records. *Id* at 38:1-16. Red's indicated it would get a computerized record keeping system to help keep track of the firearms inventory. However, when Investigator Hansen returned a year later, it was not in place. *Id.* at 42:19-43:4.

**RESPONDENT'S POST-TRIAL BRIEF - 3**

Investigator Hansen testified that in the January 2000 inspection 150 of the 970 firearms transaction records contained errors, indicating that Red's had successfully completed 820 firearms transaction records in the 12 months leading up to the inspection. The 820 completed firearms transaction records demonstrate that Red's not only knew the applicable regulations, but had the ability to comply with those regulations, and ensure that the forms were fully and accurately completed.

In June of 2001, Investigator Hansen and Inspector Dreezen returned to Red's to conduct a recall inspection. Investigator Hansen testified that two errors were found at the inspection. *Id.* at 39:20-24. The violations were discussed at the closing conference with Terry Horsley. *Id.* at 41:3-17. At this point, ATF discussed the violations and correct procedures in the initial inspection in January and March of 2000, during the warning conference in 2000, and then again during the 2001 inspection. *Id.* at 42:5-16.

Investigator Hansen's testimony demonstrates two things. First, it documents the number of occasions in which ATF reviewed the violations and relevant regulations with Red's. Second, the 2000 and 2001 inspections demonstrate Red's familiarity with the regulations, and failure to comply with them on a consistent basis. The lack of internal controls was also found in the 2005 inspection conducted by Investigator Caleb Rushing.

### C.   The 2005 inspection further documented Red's continued noncompliance with the Gun Control Act regulations.

Investigator Caleb Rushing conducted a compliance inspection of Red's in June of 2005. Investigator Rushing found numerous violations: firearm transaction records were not filled out as required by regulation, firearms were missing from inventory, and reports of multiple sales of handguns were not completed. All of these violations were repeat violations found earlier during the 2000 and 2001 inspections. Investigator Rushing reviewed approximately 430 transactions. *Id.* at 81:10-14. He found, at a minimum, 323 omissions or inaccuracies. *Id.* at 84:24-85:4.

There was evidence of transactions that occurred without any documentation, and other transactions that occurred without evidence of any background check. In addition,

**RESPONDENT'S POST-TRIAL BRIEF - 4**

some firearm transaction records were not retained on the premises for the mandatory 20 year period. *Id.* at 84:24-85:19. The 2005 inspection documented weak internal controls resulting in 10 missing firearms. *Id.* at 76:24-77:21. Red's also failed to conduct adequate bi-annual inventories, institute a system for double-checking 4473s, and install a computerized record-keeping system. Investigator Rushing also found Red's in violation of a regulatory requirement to post and distribute information concerning the dangers of firearms and children. *Id.* at 99:18-25; *Id.* at 101:6-8; *Id.* at 102:10-16.

   **D.   The 2005 inspection demonstrated Red's had failed to implement effective remedial measures.**

   The factual basis for the violations elicited from Investigator Rushing were virtually uncontested at the hearing. The evidence revealed that there were no formal internal controls put into place to identify multiple sales of handguns. *Id.* at 133:13-20. Investigator Rushing's testimony was corroborated by Ryan Horsley. Mr. Horsley was asked on a hostile direct examination about the internal controls put in place to identify multiple sales and indicated affirmatively that the procedure was to try to catch them as they occur. Transcript, Vol. II, 221:15-22.

   Mr. Horsley testified that a procedure was in place to identify multiple sales; namely, that employees were supposed to communicate to Ryan or Terry Horsley who would then make sure the appropriate form was completed. *Id.* at 222:19-223:5. However, Mr. Horsley's testimony was inconsistent with his prior testimony at the Revocation Hearing in August of 2006. *Id.* at 222:2-18; *Id.* at 223:7-17.

   Several former Red's employees testified about the procedure to report multiple sales of handguns and their training. Their testimony was markedly inconsistent concerning Red's policies, training, and procedures. *Id.* at 295;14-17 *but see* 326:10-20; 327:3-17. *Id.* at 294:3-295:13 *but see* 326:10-20; 327:3-17. *Id.* at 298:23-24; 299:3-7 *but see* 321:18-23 *but see* 30:7-10.

   In short, there was no evidence Red's had implemented the remedial measures discussed

**RESPONDENT'S POST-TRIAL BRIEF - 5**

in 2000 and 2001.  Investigator Rushing found no evidence of a double check system for 4473's; no evidence of effective bi-annual inventories, and no computerized record keeping system during ATF's inspection in 2005 despite Red's warning conference and opportunities to do so. Transcript, Vol. I, 135:18-136:7.

## II.    THE WILLFULNESS STANDARD

**Willfulness is established when an FFL has knowledge of the regulatory requirements of the Gun Control Act and commits repeat violations.**

This Court has held, "a federal firearms licensee willfully violates the regulatory scheme created by Congress if he has knowledge of the obligations imposed by Congress and either disregards or is indifferent to them. (citing *Perri v. Department of Treasury*, 637 F.2d 1332, 1336 (9th Cir. 1981)." Docket No. 17, p. 7.

Repeated record keeping violations are willful and are sufficient to support the revocation or denial of a licensee.  *See e.g., Cucchiara v. Secretary of Treasury*, 652 F.2d 28 (9th Cir. 1981) (repeat failure to complete ATF Forms, failure to record acquisitions and dispositions, and sales to three individuals who they had reason to believe were prohibited persons constitute willful violations of the Gun Control Act); *Article II Gun Shop v. Gonzales*, 441 F.3d 492 (7th Cir. 2006) (failure to properly complete 15 ATF Form 4473s are sufficient to revoke dealer's license based on repeat nature of violations when 15 erroneous forms were found out of 880 forms). *Willingham Sports v. Bureau of Alcohol, Tobacco & Firearms*, 348 F. Supp. 2d 1299 (S.D. Ala. 2004), *aff'd* 415 F.3d 1274 (11th Cir. 2005) (violations based on failure to record disposition of firearms, errors on ATF Forms 4473, and other record errors which were repeat violations); *Breit & Johnson v. Ashcroft*, 320 F. Supp.2d 671 (N.D. Ill. 2004) (revocation based on repeated Acquisition and Disposition records and ATF Form 4473 violations which occurred after ATF warning conference with licensee); *Cook v. Herbert*, 2004 WL 40525 (W.D. Va. 2004) (licensee willfully violated Gun Control Act when he engaged in repeat failure to complete records and

**RESPONDENT'S POST-TRIAL BRIEF - 6**

ATF Forms 4473 and had missing guns after a warning conference with ATF officials).[1]

The administrative record and the testimony at the evidentiary hearing clearly demonstrated Red's willful violations of the Gun Control Act, by documenting Red's repeated failures to abide by the requirements of the Gun Control Act, despite its understanding of these regulatory requirements.[2]  ATF made repeated attempts to educate Red's on the applicable regulations and suggested remedial measures designed to avoid future violations.  Red's was specifically warned at the conclusion of the 2000 warning conference that future violations may result in the revocation of its license.  This demonstrates Red's was plainly indifferent to the Gun Control Act's regulatory requirements and therefore committed willful violations.

**B.      Evidence of plain indifference can also be inferred from Red's failure to implement suggested remedial measures.**

A licensee's failure to implement effective remedial measures is also a factor to be considered in determining whether the violations were committed willfully. The uncontroverted evidence documented ATF's efforts to educate Red's in proper procedures and its failure to establish appropriate internal controls.  Investigator Hansen testified of his efforts in 2000 to encourage Red's to make changes to bolster its internal controls.  The subsequent warning

---

[1]*See also, McLemore v. U.S. Treasury*, 317 F. Supp. 1077 (N.D. Fla. 1970) (failure to fully fill out ATF Form 4473 and properly maintain Acquisition and Disposition records constitute willful violations of the Gun Control Act); *T.T. Salvage Auction v. Sec'y of Treasury*, 859 F. Supp. 977 (E.D. N.C. 1994) (repeat violation of record keeping provisions of Gun Control Act constitute willful violations of the Gun Control Act).  *See also Trader Vic's v. O'Neill*, 169 F. Supp. 2d 957 (N.D. Ind. 2001) (revocation based in part on failure to accurately keep Acquisition and Disposition records and ATF Forms 4473s); *Al's Jewelry & Loan Inc. v. Dep't of Treasury*, 738 F. Supp. 221 (E.D. Mich. 1990) (revocation based on failure to properly complete ATF Form 4473s and complete Acquisition and Disposition records).

[2] In addition, the courts have consistently held that section 923(f)(3) allows a district court to consider evidence not submitted by the parties in the underlying administrative proceeding. In_Morgan v. United States_, 473 F. Supp. 2d 756, 761 (E.D. Mich 2007), the court observed that on de novo review of a firearms licensing decision, "[a court] need not confine its review [in the de novo proceeding] solely to the record compiled during the underlying administrative hearing, but instead 'may consider any evidence submitted by the parties to the proceeding.'" (Internal citations omitted)

**RESPONDENT'S POST-TRIAL BRIEF - 7**

conference further illustrated remedial measures that were promised but not adhered to on a consistent basis.  The computerized record keeping system suggested at the 2000 warning conference was not implemented.  The largely successful 2001 inspection reflects Red's ability to successfully implement procedural changes; however, the large number of violations found in 2005 indicates those procedures were short lived.

In  *Lumber Jack Bldg. Centers v. Alexander*, 536 F. Supp. 2d 804 (E.D. Mich. 2008), the court clearly considered the FFL's failure to implement suggested changes as indicia of plain indifference.  The court noted that "Petitioner clearly knew of its obligations under the Gun Control Act, however, it failed to implement the necessary changes and bring its record keeping practices into compliance with the law."  The court also noted that "[w]ith each compliance inspection, Petitioner was given an opportunity to improve, but instead, Petitioner has apparently taken a less responsible attitude towards its duties." *Id*. at 810.  Likewise, Red's was aware of its obligations under the Gun Control Act, failed to implement necessary changes, and as demonstrated from 2001 to 2005, made inconsistent efforts to remain in compliance. *See also*, *3 Bridges, Inc. v. United States*, 216 F. Supp. 2d 655, 659 (E.D. Ky., 2002).

### III.   EVIDENTIARY ISSUE RAISED AT THE ADMINISTRATIVE HEARING

**An evidentiary hearing governed by 18 U.S.C. §923(f)(3) should allow the introduction of evidence not previously made part of the administrative record.**

18 U.S.C. §923(f)(3) specifically provides:

> (3) If after a hearing held under paragraph (2) the Attorney General decides not to reverse his decision to deny an application or revoke a license, the Attorney General shall give notice of his decision to the aggrieved party. The aggrieved party may at any time within sixty days after the date notice was given under this paragraph file a petition with the United States district court for the district in which he resides or has his principal place of business for a de novo judicial review of such denial or revocation. <u>In a proceeding conducted under this subsection, the court may consider any evidence submitted by the parties to the proceeding whether or not such evidence was considered at the hearing held under paragraph (2).</u> (emphasis added) If the court decides that the

**RESPONDENT'S POST-TRIAL BRIEF - 8**

> Attorney General was not authorized to deny the application or to
> revoke the license, the court shall order the Attorney General to
> take such action as may be necessary to comply with the judgment
> of the court.

The first objection raised was to Investigator Hansen's reference to a worksheet he created after the 2000 inspection documenting the violations he had found (marked as Exhibit 4). Transcript, Vol. I, 21:9-23:5. The basis of the objection was that the 2000 violations were not discussed at the administrative hearing. *Id.* at 21:13-21.

A similar objection was made during Investigator Rushing's testimony concerning the 2005 inspection; Red's counsel argued that Investigator Rushing's 2005 Report of Violations (marked as Exhibit 9) was not relevant to the proceedings and should be excluded as it was outside of the administrative process. *Id.* at 106:5-107:23. The Court correctly included this evidence.

Red's objections on this issue are refuted by the plain language of the statute and relevant case law. The courts have consistently held that section 923(f)(3) allows a district court to consider evidence not submitted by the parties in the underlying administrative proceeding. This was also recognized by this Court. *See* Jan. 24, 2008 Order, pp. 8-9, Docket No. 55. In *Morgan v. United States*, 473 F. Supp. 2d 756, 761 (E.D. Mich 2007), the court observed that on de novo review of a firearms licensing decision, "[a court] need not confine its review [in the de novo proceeding] solely to the record compiled during the underlying administrative hearing, but instead 'may consider any evidence submitted by the parties to the proceeding.'" (Internal citations omitted). In *Arwady Hand Trucks Sales, Inc. v. Vander Werf,* 507 F. Supp. 2d 754, 758 (S.D. Tex. 2007) the court noted that, in such a case, "[a] court is entitled to consider any evidence submitted by the parties regardless of whether such evidence was presented at the underlying hearing . . . ." *See also, Strong v. United States*, 422 F. Supp. 2d 712, 719 (S.D. Tex. 2006) (concluding that "[t]he district court may accord the administrative findings such weight as it believes they deserve in light of the evidence in the administrative record and the evidence, if

**RESPONDENT'S POST-TRIAL BRIEF - 9**

any, the district court receives to supplement the record"). The same conclusion was reached by the court in *Kuss v. United States*, 440 F. Supp. 2d 645, 649 (E.D. Ky. 2005), stating that de novo review of an administrative decision to revoke a firearms license "may be supplemented by the admission of additional evidence."

Notably, the consideration of evidence outside the administrative record is not mandatory but, rather, it is a matter within the district court's discretion. The Seventh Circuit, in holding that the pre-1986 version of section 923(f)(3) provided for de novo review, observed that there is no "require[ment] [for] the district court to hold a hearing and receive evidence beyond that contained in the administrative record in every case . . . . Congress intended to afford the district court the discretion to receive additional evidence to be considered along with that in the administrative record when some good reason to do so either appears in the administrative record or is presented by the party petitioning for judicial review." *See Stein's Inc. v. Blumenthal*, 649 F.2d 463, 466-67 (7th Cir. 1980).

The district court's consideration of evidence outside the administrative record in this case is warranted. In petitioning for judicial review, the licensee expressly challenged the ATF's determination of willfulness. The district court, in its discretion, determined that the legal issue could not be resolved on the basis of the existing administrative record alone, and that an evidentiary hearing was required. The supplemental evidence offered by the ATF tended to, in the very least, shed additional light on the legal argument, advanced by the ATF, that the licensee demonstrated plain indifference to the regulatory requirements.

## IV.    CONCLUSION

There is no evidence that Red's conduct and repeated failure to comply with the Gun Control Act was purposeful or intentional. However, a violation need not be intentional to be willful under the Gun Control Act. A willful violation occurs when a FFL understands the requirements of the law, but is indifferent to it. The administrative record before the Court, along with the testimony and additional exhibits presented at the hearing demonstrated that Red's

**RESPONDENT'S POST-TRIAL BRIEF - 10**

knew of the requirements of the Gun Control Act and yet, continued to violate it.  Accordingly, these violations are willful and the Court should uphold the revocation of Red's federal firearms license.

DATED this _15_ day of September, 2008.

Respectfully submitted,

THOMAS E. MOSS
United States Attorney

DEBORAH A. FERGUSON
Assistant United States Attorney

**RESPONDENT'S POST-TRIAL BRIEF - 11**

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on ⟨5ᵗʰ⟩ day of September, 2008, the **RESPONDENT'S POST-TRIAL BRIEF** was electronically filed with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

Mark S. Geston
101 S Capitol Blvd. # 1900
Boise, ID 83702-5958
msgeston@stoel.com

Richard E. Gardiner
10560 Main St., Ste 404
Fairfax, VA 22030
regardiner@cox.net

**RESPONDENT'S POST-TRIAL BRIEF - 12**